SEBASTIAN NEWTON-TAPIA, OSB #043761
LANE COUNTY OFFICE OF LEGAL COUNSEL
125 East Eighth Avenue
Eugene, OR 97401
541/682-3728
541/682-3803 fax
sebastian.newton-tapia2@co.lane.or.us
Of Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| **CHARLES WILSON,**<br><br>Plaintiff,<br><br>v.<br><br>**LANE COUNTY SHERIFF'S OFFICE** and **SHERIFF ROSS BURGER** in his individual and official capacities,<br><br>Defendants. | **Case No. 6:12-cv-00691-HO**<br><br>**MEMORANDUM IN SUPPORT OF DEFENDANTS MOTION FOR SUMMARY JUDGMENT**<br><br>**Oral Argument Requested** |

Comes now Defendants Lane County Sheriff's Office and Ross (*sic*) Burger (herein "Russel" Burger) by and through their attorney, Sebastian Newton-Tapia, and offer the following authorities and arguments in support of their Motion for Summary Judgment.

## I. FACTS

Plaintiff was arrested at the Lane County Circuit Courthouse on April 19, 2010 concerning a violation of a temporary stalking order. Exhibit A. Judge Charles M. Zennaché, Lane County Circuit Court Judge, found probable cause for the arrest. *Id. See also*, Declaration

of Counsel in Support of Defendants Motion for Summary Judgment. Plaintiff was handcuffed with his hands behind his back when he was arrested. Doc. 1, ¶12. Plaintiff had an injury at about the same time. *Id.* Plaintiff was seen by medical staff at intake because he complained of pain from a pre-existing injury to his knee and shoulder. Exhibit B. Plaintiff claims he was denied access to a "usable telephone" while incarcerated Doc. 1, ¶14. Plaintiff had access to a collect-call telephone for the first two hours of intake. *See* Declaration of Larry Brown in Support of Defendants Motion for Summary Judgment. Afterwards, Plaintiff repeatedly pounded on his cell door after being told to stop. *Id.* This behavior led to a higher level of restriction at the jail. *Id.*

## II. STANDARD FOR SUMMARY JUDGMENT

### A. Standard under FRCP 12 (b) (6)

FRCP 12 (b) states:

> "Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the following defenses by motion:
>
> . . .
>
> (6) failure to state a claim upon which relief can be granted."

When considering a 12(b)(6) motion, all allegations of material fact are taken as true and construed in the light most favorable to the non-moving party. *William O. Gilley v. Atlantic*, 588 F.3d 659, 662 (9th Cir. 2009). However, Plaintiff's claims must satisfy the pleading standards set forth in *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007) and *Iqbal v. Ashcroft*, 129 S. Ct. 1937 (2009). Courts view well pleaded factual allegations as true, but also require the complaint to contain enough facts to state a claim that is plausible on its face. *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007). The holding in *Iqbal* expanded the application of *Twombly,* to "all civil actions". *Id* at 1953.

**B.      Standard under FRCP 56**

Federal Rule of Civil Procedure 56 governs the procedure for summary judgment in federal court. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FRCP 56(a). A fact is material when under the substantive governing law it could affect the case's outcome. *Anderson v. Liberty Lobby, Inc.* 477 US 242, 248 (1986). A genuine dispute exists over a material fact if a reasonable jury in reviewing the evidence could return a verdict for the non-moving party. *Id.* The moving party has the initial burden to establish the absence of genuine issues of material fact as against each material issue in the case. *Miller v. Glen Miller Prods., Inc.* 454 F.3d 975, 987 (9th Cir. 2006). Once sufficient evidence is presented by the movant, the burden shifts to the non-moving party to present "significant probing evidence" to support each claim. *C.A.R. Transp. Brokerage Co., Inc. v. Darden Rests., Inc.* 213 F.3d 474, 480 (9th Cir. 2000). Moreover, the non-moving party must come forward with more than a scintilla of evidence:

> "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict." *Anderson* at 252.

Thus, 'where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial.'" *Miller* at 988, quoting *Matsushida Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 US 574, 587 (1986). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372 at 380, 127 S.Ct. 1769.

Furthermore, even if there are genuine issues of material fact regarding some elements of a claim, the moving party only needs to show that there is no genuine issue of material fact regarding one essential element of a claim:

> "The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is 'entitled to a judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex Corporation v. Catrett*, 477 U.S. 317, 322-323 (1986).

Applying the above standards, Defendants will show that Plaintiffs have not presented material facts sufficient to support their claims.

## III. ARGUMENT

### A. Summary Judgment in Favor of the Defendants Should be Granted on Plaintiff's Claim of Fourth Amendment Violations

#### 1. Liberal Pleading Standard

Defendants approach this memorandum from the perspective of a liberal pleading standard. "[A] complaint should not be dismissed if it states a claim under any legal theory, even if the plaintiff erroneously relies on a different legal theory. *United States v. Howell*, 318 F.2d 162, 166 (9th Cir. 1963). Moreover, a *pro se* civil rights complaint should be liberally construed, and should not be dismissed unless it appears certain that the plaintiff can prove no set of facts which would entitle him or her to relief. *Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 595-96, 30 L.Ed.2d 652 (1972)." *Haddock v. Board of Dental Examiners of Cal.*, 777 F.2d 462, 464 (9th Cir. 1985).

For the purpose of this memorandum, it is assumed that Plaintiff meant to file against Russel Burger *and* the Lane County Sheriff's Department.

**2. Failure to State a Claim Concerning Use of Force ( FRCP 12(b)(6))**

The Fourth Amendment to the United States Constitution provides as follows:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

Plaintiff suggests, without stating, that he was injured by an unnamed Deputy Sheriff when he was arrested on April 19, 2010. More specifically, Plaintiff claims, "I was handcuffed with my hands behind my back which caused my shoulder to dislocate." Doc 1, ¶12. Plaintiff fails to allege unlawful use of force when the Sheriff's Deputy placed Plaintiff under arrest, because Plaintiff does not allege that the degree of force used caused his shoulder to dislocate. He only alleges the two events occurred contemporaneously. Plaintiff fails to allege that Sheriff Burger arrested Plaintiff. Plaintiff fails to allege that Sheriff Burger knew of the arrest and ratified it.

**3. Summary Judgment for Claim Involving Use of Force and 42 USC § 1983 Liability (FRCP 56).**

At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a "genuine" dispute as to those facts. FRCP 56(c). At the summary judgment stage in an action claiming that a law enforcement officer used excessive force in effecting seizure, once the court determines the relevant set of facts and draws all inferences in favor of the nonmoving party, to the extent supportable by the record, the reasonableness of deputy's actions is a pure question of law. *Scott v. Harris*, 550 US 372, 381 FN8 (2007). "Conclusory, speculative testimony in affidavits and moving papers is insufficient

to raise genuine issues of fact and defeat summary judgment." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). Summary Judgment in excessive force cases should be granted sparingly. *Carter v. City of Carlsbad*, 799 F. Supp.2d 1147. Although this is an excessive use of force issue, the present dispute is one in which summary judgment is appropriate.

No reasonable juror could believe that Plaintiff was injured from this arrest. Plaintiff was interviewed by a nurse at intake. Exhibit B. Plaintiff failed to mention that he was injured during the arrest, rather, he mentioned a pre-existing injury to his shoulder and knee, for which he was given medications for pain. *Id.* Furthermore, records reveal that Plaintiff tore his inmate manual shortly after he was taken into custody. *See* Declaration of Larry Brown in Support of Defendants Motion for Summary Judgment, p. 3, number 7. That is not consistent with a person whose shoulder was just dislocated by unlawful force.

Former Sheriff Burger did not personally arrest Plaintiff. *See* Declaration of Larry Brown in Support of Defendants Motion for Summary Judgment. Former Sheriff Burger was not personally notified about any arrest or incarceration decision involving Plaintiff. *Id.*

Former Sheriff Burger's designation as an individual capacity defendant should be dismissed because the allegation is not supported by anything other than threadbare allegations (*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, (2009)) and is directly disproved herein. *See* Declaration of Larry Brown in Support of Defendants Motion for Summary Judgment.

Section 1983 liability attaches only where the municipality itself causes the constitutional violation through a "policy or custom, whether made by its lawmakers or those whose edicts or acts may fairly be said to represent official policy." *Monell v. Department of Social Services*,

436 U.S. 658, 690–91. Because former Sheriff Burger was not made aware of these acts, he could not have ratified them. Therefore, no municipal liability exists due to former Sheriff Burger. Plaintiff did not file a tort claim notice, file an internal complaint for unlawful use of force, or provide any other form of communication that would bring his claims to the attention of supervisors within the Lane County Sheriff's Department. *See* Declaration of Larry Brown in Support of Defendants Motion for Summary Judgment. Without any notification, no one could ratify any act, unlawful or otherwise.

**4.      The Arresting Officer is Entitled to Qualified Immunity Concerning Decision to Arrest.**

Section 1983 is not itself a source of substantive rights, rather it provides a method for the vindication of rights conferred in the United States Constitution and Laws. *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 617 (1979). Therefore, a plaintiff may prevail only if he can demonstrate that he was deprived United States Constitution or federal statute rights. To state a claim for a deprivation of Due Process, a plaintiff must show (1) that he possessed a constitutionally protected interest; and (2) that he was deprived of that interest without due process of law. *Cleveland Board of Education v. Loudermill*, 470 U.S. 532 (1985).

Individual capacity defendants can, in some instances, be protected from Section 1983 claims by qualified immunity. *Harlow v. Fitzgerald*, 457 U.S. 800 (1982). Immunity questions should be resolved at the earliest possible stage in litigation. *Dunn v. Castro*, 621 F.3d 1196, 1199 (9th Cir. 2010), citing *Hunter v. Bryant*, 502 US 244, 227 (1991). "Unless the plaintiff's allegations state a claim of *violation of clearly established law*, a defendant pleading qualified immunity is entitled to dismissal before commencement of discovery." (Emphasis added.) *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). See also *Dunn v. Castro*, 621 F.3d 1196, 1199 (9th Cir. 2010).

In analyzing whether a government official is entitled to qualified immunity, the court looks to the following two prong test:

First, the court determines whether the facts alleged, construed in the light most favorable to the injured party, establish the violation of a constitutional right.

Second, the court decides whether the right is clearly established such that a reasonable government official would have known that "his conduct was unlawful in the situation he confronted." (Internal cites omitted.) *Dunn v. Castro*, 621 F.3d 1196, 1199 citing *Saucier v. Katz*, 533 U.S. 194 (2001).

The court is permitted to use sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first. *Id* citing *Pearson v. Callahan*, 455 U.S 223 (2009). The Court in *Castro* decided the question of qualified immunity solely on the second prong because it was dispositive and it was a question of law for the judge. *Dunn v. Castro*, 621 F.3d 1196, 1199 (9th Cir. 2010), citing *Tortu v. Las Vegas Metro. Police Dep't*, 556 F.3d 1075, 1085 (9th Cir. 2009).

Plaintiff suggests, without stating, that he was unlawfully seized when he was arrested on April 19, 2010. However, contrary to Doc. 1, ¶15, Plaintiff was served with a copy of the Temporary Stalking Protective Order in court on April 5, 2010. Exhibit C. Also, Plaintiff admits he had contact with the protected party after this date (Doc. 1, ¶10), which would constitute additional, unauthorized contact. The unnamed Sheriff's Deputy who arrested Plaintiff was under a statutory mandate to make an arrest under these circumstances. ORS 133.310(3) provides as follows:

> "A peace officer shall arrest and take into custody a person without a warrant when the peace officer has probable cause to believe that:

(a) There exists an order issued pursuant to ORS 30.866, 107.095 (1)(c) or (d), 107.716, 107.718, 124.015, 124.020, 163.738 or 419B.845 restraining the person;

(b) A true copy of the order and proof of service on the person has been filed as required in ORS 107.720, 124.030, 163.741 or 419B.845; and

(c) The person to be arrested has violated the terms of that order.

The underlying action is covered under ORS 30.866 as follows:

A person may bring a civil action in a circuit court for a court's stalking protective order or for damages, or both, against a person if:

(a) The person intentionally, knowingly or recklessly engages in repeated and unwanted contact with the other person or a member of that person's immediate family or household thereby alarming or coercing the other person;

(b) It is objectively reasonable for a person in the victim's situation to have been alarmed or coerced by the contact; and

(c) The repeated and unwanted contact causes the victim reasonable apprehension regarding the personal safety of the victim or a member of the victim's immediate family or household."

The unnamed Sherriff Deputy's decision to arrest Plaintiff was not a clear violation of the law, as required in *Mitchell*. Rather, it was mandated by statute. ORS 30.866. This unnamed officer is entitled to qualified immunity at this stage of the case.

**5. Potential Claim Involving Access to a Telephone**

Plaintiff suggests, without stating, that his constitutional rights to access a telephone as a pre-trial detainee were violated. Doc 1, ¶14. While it is true that depriving a pretrial detainee access to a telephone may rise to the level of a constitutional rights violation, this is not the case here. Plaintiff was initially detained in a pre-trial holding cell for two hours. Exhibit B. During this time he had access to a telephone which permitted only collect calls. Limiting an inmate's access to only collect-call telephones does not rise to the level of a constitutional violation.

*Manly v. Sonoma County*, 1993 WL 742803 (N.D.Cal.). Summary judgment is appropriate because Plaintiff is not entitled to anything other than access to a collect-call telephone.

**6. Any Conceivable State Law Claim is Barred under Notice of Tort Claim Act.**

Plaintiff suggests, without stating, that state law claims are contemplated in this Complaint. Doc 1, ¶5. Any state law claim is barred under ORS 30.275, as follows,

> "(1) No action arising from any act or omission of a public body or an officer, employee or agent of a public body within the scope of ORS 30.260 to 30.300 shall be maintained unless notice of claim is given as required by this section.
>
> (2) Notice of claim shall be given within the following applicable period of time, not including the period, not exceeding 90 days, during which the person injured is unable to give the notice because of the injury or because of minority, incompetency or other incapacity:
>
> (a) For wrongful death, within one year after the alleged loss or injury.
>
> (b) For all other claims, within 180 days after the alleged loss or injury.
>
> ...
>
> (7) In an action arising from any act or omission of a public body or an officer, employee or agent of a public body within the scope of ORS 30.260 to 30.300, the plaintiff has the burden of proving that notice of claim was given as required by this section."

Plaintiff has failed to comply with the Tort Claim Notice act and is thus bared from filing these claims in a subsequent, amended complaint. *See* Declaration of Counsel in Support of Defendants Motion for Summary Judgment and Declaration of Larry Brown in Support of Defendants Motion for Summary Judgment.

**7. Any act involving DA**

Plaintiff suggests, without stating, that the District Attorney's decision to deny him access to records is somehow relevant to this action. Doc 1, ¶16. However, the District Attorney and his agents were not named as a party. The Office of Legal Counsel could not represent the District Attorney if he were named as a party.

## III. CONCLUSION

In conclusion, summary judgment in favor of the defendants should be granted on all theories of Plaintiff's Complaint for the following reasons: Plaintiff failed to allege sufficient facts to support a claim for unlawful use of force; former Sheriff Burger was not actively involved in Plaintiff's arrest; former Sheriff Burger did not ratify any decision; the unnamed Sheriff's Deputy who made the arrest is entitled to qualified immunity; and Plaintiff had access to a collect-call telephone while held in custody.

Therefore, Defendants Motion for Summary Judgment should be granted.

DATED this 3rd day of July 2012.

LANE COUNTY OFFICE OF LEGAL COUNSEL

By: ______________________

Sebastian Newton-Tapia, OSB# 043761
Lane County Office of Legal Counsel
125 East Eighth Avenue
Eugene, OR 97401
541/682-3728
541/682-3803 fax
sebastian.newton-tapia2@co.lane.or.us
Of Attorneys for Defendants

Routed by:

# INCIDENT REPORT

LANE COUNTY SHERIFF'S OFFICE

HATE CRIME | GANG

RELATED REPORTS
- ☐ Incident
- ☐ Accident
- ☐ Custody
- ☐ Citation
- ☐ Prop./Evidence
- ☐ Supplemental
- ☐ DUII Investigation

Page 1 of 4

1. Incident & ORS No.: 163.750 Violation stalking Protective order

2. Case Number: 10-8215

3. Location: 82623 Simonsen Rd Eugene OR 97405

5. Source: DISPATCHED

6. Rept. Date: 4-19-10 | 7. Time: 1725 | 8. Occurred Date: 4-17-10 | 9. Time: 0700 to

## VICTIM

10. Name: Snedegar | First: Michael | Middle: Lee SR.
11. DOB: 11-6-59 | 12. Race/Sex: W/M | 13. Work Hours: N/A

14. Res. Address: 82623 Simonsen Dr | City: Eugene | State: OR | Zip: 97405
15. Res. Phone: 541-302 4569
16. Occupation/School/Type of Business: N/A

17. Bus. Address: N/A | City | State | Zip
18. Bus. Phone: N/A
19. Injured Yes/No
20. Where Taken: N/A
21. NOT CONT'D

## C-Compl/F-Firm

22. Name | First | Middle
23. DOB | 24. Race/Sex | 25. Work Hours
26. Address | City | State | Zip
27. Res. Phone | 28. Bus. Phone | 29. Relationship
30. Name | First | Middle
31. DOB | 32. Race/Sex | 33. Work Hours
34. Address | City | State | Zip
35. Res. Phone | 36. Bus. Phone | 37. Relationship

N/A

## VEHICLE INFORMATION

☐ Stolen ☐ Suspect ☐ Vict. ☐ Loc ☐ Inv. | Towed Veh.
38. VIN # | 39. Value
40. Color (Top) ____ (Solid or Bottom) ____ | 41. Lic. # | State | Exp. Yr. | Type | Veh. Yr. | Make | Model | Style

01 black, 02 blue, aqua, turquoise, 03 brown, bronze, copper, 04 purple, 05 green, lime, olive, 06 grey, silver, 07 red, pink, maroon, 08 tan, beige, 09 white, cream, 10 yellow, 11 orange, gold, 12 unknown

42. 1 keys in vehicle, 2 not driveable, 3 stereo tape, 4 CB radio, 5 special antenna, 6 vinyl top, 7 loud muffler, 8 custom wheels

1 delinquent payments, 2 rust/primer spots, 3 level altered, 4 decorative paint, 5 damage to front, 6 damage to rear, 7 damage to right, 8 damage to left

SPECIAL VEHICLE FEATURES: 1 sticker in window, 2 sticker/decal on bumper, 3 sticker/decal on body, 4 painted inscription on body

FURTHER DESCRIPTION OF MARKED ITEMS
VCD | 43.

44. Reg. Owner Name | First | Middle | 45. Phone
46. Address | City | State | Zip | 47. DOB | 48. Notified Date/Time | 49. By Whom I.D.#

N/A

## S-Susp./MP-Missing Person

50. Name: Wilson | First: Charles | Middle: Walter
51. DOB/Age: 3-9-40 | 52. AKA: N/A
53. Address: 82619 Simonsen Dr | City: Eugene | State: OR
54. Race/Sex: W/M | Ht.: 510 | Wt.: 135 | Hair: GRY | Eyes: HZL | 55. Photograph Yes☐ | 56. Composite Yes☐
57. Clothing Description: UNK

58. Name | First | Middle
59. DOB/Age | 60. AKA
61. Address | City | State | 62. Race/Sex | Ht. | Wt. | Hair | Eyes | 63. Photograph Yes☐ | 64. Composite Yes☐
65. Clothing Description

N/A

MARKS/CHARACTERISTICS | SCARS/MARKS/TATTOOS

| Misc. | Misc. | Type | Location |
|---|---|---|---|
| 1 1 black or dk. clothes | 1 1 right handed | unk/none | 0 unknown |
| 2 2 heavy coat | 2 2 left handed | names/initials | 1 head/neck |
| 3 3 gloves | 3 3 obvious wig | mom/mother/love | 2 shoulder/bicep |
| 4 4 bandages/cast | 4 4 effeminate | heart & dagger | 3 forearm/hand |
| 5 5 freckles | 5 5 squint | military insignia | 4 fingers |
| 6 6 acne | 6 6 crosseyed | misc. pictures | 5 leg |
| 7 7 profane/abusive | 7 7 limp | missing extremity | 6 chest/stomach |
| 8 8 apologetic/polite | 8 8 poss. mental | scar (lg.) (sm.) | 7 back |
| | | birthmark | 8 other |

| General Appearance | Build | Complexion | Hair | Hair Style | Speech |
|---|---|---|---|---|---|
| 0 0 unknown | 0 0 unknown | 0 0 unknown | 0 0 unknown | 0 0 unknown | 0 0 unknown |
| 1 1 well dressed | 1 1 slight | 1 1 light-pale | 1 1 short | 1 1 straight | 1 1 normal |
| 2 2 casual | 2 2 medium | 2 2 medium | 2 2 collar | 2 2 wavy | 2 2 soft |
| 3 3 dirty/ragged | 3 3 heavy | 3 3 dark | 3 3 shoulder | 3 3 curly | 3 3 raspy |
| 4 4 mod/unusual clothes | 4 4 muscular | 9 9 other | 4 4 very long | 4 4 braided | 4 4 deep |
| 5 5 uniform | 9 9 other | | 5 5 balding/bald | 5 5 afro | 5 5 high |
| 9 9 other | | | 9 9 other | 9 9 other | 9 9 other |

| Facial Hair | Glasses | Teeth | Mask |
|---|---|---|---|
| 0 0 unknown | 0 0 unknown | 0 0 unknown | 0 0 unknown |
| 1 1 none | 1 1 none | 1 1 normal | 1 1 none |
| 2 2 mustache only | 2 2 plain wire frame | 2 2 gold/silver | 2 2 ski |
| 3 3 stubble only | 3 3 plain plastic frame | 3 3 missing | 3 3 stocking |
| 4 4 beard | 4 4 sunglasses—wire fr. | 4 4 very white | 4 4 kerchief |
| 5 5 sideburns | 5 5 sunglasses—plastic fr. | 5 5 decayed/dirty | 9 9 other |
| 9 9 other | 9 9 other | 9 9 other | |

SCD | 66. Additional Information

67. Reporting Officer: S. Fenley | I.D.#: 110
68. Assisting Officer: Wilson D74 | I.D.#
69. Date & Time Prepared: 4-19-10 0130
70. Approved By | I.D.#

Exhibit A, page 1 of 5

677-20A | 09/8

APR. 19. 2010 10:41AM NO. 7661 P. 8

# CONTINUATION REPORT

LANE COUNTY SHERIFF'S OFFICE

PAGE 2 OF 4
CASE NUMBER 10-2216

**CONTACTED:** Ogden, Tom Edwin DOB: 03/23/29
82705 Simonsen Rd Eugene, Or 97405
541-342-7864

**INVESTIGATION:** On 04/18/10 at 1804 hours I was dispatched to 82623 Simonsen Dr in Eugene for a Violation of Stalking Order. I contacted records and verified that Michael Lee Snedegar had a valid Stalking Order against Charles Warren Wilson. The stalking order was served on 04/05/10 at 1730 hours. The stalking order states that Wilson can't block, obstruct, or alter water flow to Snedegar's property.

I called Snedegar and received a statement. I tried to contact Wilson at his residence but there was no answer. I contacted Snedegar at his residence and he told me that on Saturday morning 04/17/10 at around 7-7:30 am he attempted to use his water. At that time he had no pressure and water was just dripping out. Snedegar went to his 1500 gallon holding tank and observed no water in the tank. Snedegar believes the water was shut off by Wilson.

Snedegar's property shares a water line with 3 other properties. The water line goes through Tom Edwin Ogden's property, then Wilson's, and ends at Snedegar's property. Snedegar has an easement along the waterline through the others properties. Ogden owns 50 percent, Wilson ownes 25 percent, and Snedegar owns 25 percent.

Snedegar usually walks the water line to find the reason for the water problem such as a broken line. This time Snedegar wasn't allowed to check the water line because Wilson has an elder abuse protective order against Snedegar which orders Snedegar to stay off Wilson's property. Snedegar has previously found his water turned off several times on the back side of Wilson's residence by the way of cut of valves.

Snedegar told me that Saturday morning 04/17/10 he had contacted Ogden and asked him if there were any problems with the water line. Ogden told Snedegar that he wasn't having any problems with his water.

Snedegar believed that Ogden had a way of contacting Wilson. I contacted Ogden at his residence. Ogden informed me that the spring that feeds the 3 properties was on BLM land and that he is the caretaker of the water line. Ogden fixes breaks prior to his residence and also on Wilson's and Snedegar's properties.

Ogden volunteered to show us the water line and to check for any possible breaks. I informed Ogden that he didn't have to do that and that it wasn't his responsibility. Ogden said he wouldn't mind. I followed Ogden to where the water line crossed the dirt road to Wilson's property. I then followed Ogden across Wilson's property looking for any breaks in the line. We observed no breaks in the water line between the road and Wilson's residence.

I tried to make contact with Wilson at his residence but no one answered the door.

| Reporting Officer | I.D.# | Assisting Officer | I.D.# | Date & Time Prepared | Approved By | I.D.# |
|---|---|---|---|---|---|---|
| [illegible] | | [illegible] | | 04/19/10 0130 | [illegible] | |

# CONTINUATION REPORT
LANE COUNTY SHERIFF'S OFFICE

PAGE 3 OF 4
CASE NUMBER 10-2215

Ogden showed me where the cut-off valves were on the backside of Wilson's house. There were 5 cut-off valves and 1 of them was turned off. I turned it back on and heard water enter the line. I followed Ogden up the water line between Wilson's residence and Snedegar's residence continually looking for any breaks in the line. We observed no breaks between Wilson's residence and Snedegar's residence.

I contacted Snedegar and asked him to check his water. Snedegar advised me that the water was running again.

I have probable cause to arrest Charles Warren Wilson DOB 3/9/40 for Violation of Stalking Order. I have completed a probable cause affidavit and attempt to locate form; which were turned in with this report.

Snedegar advised he and Wilson have a hearing on 04/19/10 to contest the orders. I sent Sgt Weir, Sergeant of transport, an email advising him of probable cause to arrest Wilson.

**STATEMENT:** **Snedegar, Michael Lee**

I contacted Snedegar at his residence and Snedegar advised me that he had no water. Snedegar said when he woke up on Saturday April 17, 2010 at about 7-7:30 am he had no water. Snedegar has a 1500 gallon holding tank which was empty and estimates that he hasn't had water since the Tuesday or Wednesday prior to 04-17-10.

Snedegar stated that he bought his property from Wilson 5 years ago and with the purchase received water rights and easement along the water line. At that time Ogden owned 50 percent and Wilson owned 50 percent. When Wilson sold the property to Snedegar he also gave 25 percent of his water rights to Snedegar. Snedegar stated that he has had problems with Wilson since he moved in. Snedegar stated that Wilson has turned off his water about 10 times in the last 5 years; mostly when he leaves town but believes Wilson also does it to be mean. Because of the issues Snedegar was having he went to the courthouse and got a Stalking order against Wilson. At the same time Wilson got an elder abuse protective order against Snedegar.

Snedegar usually walks the water line to insure there are no breaks in the water line. Snedegar isn't allowed on Wilson's property due to the order against him from Wilson.

Snedegar contacted Ogden first thing on Saturday April 17, 2010 once he noticed he had no water. Ogden told Snedegar that he had no problem with water at his residence. Snedegar believes that Wilson turned off his water.

| Reporting Officer I.D.# | Assisting Officer I.D.# | Date & Time Prepared | Approved By I.D.# |
|---|---|---|---|
| S. F0 7 GEKI 'ON | Wilson 974 | 04/19/10 0130 | |

# CONTINUATION REPORT

LANE COUNTY SHERIFF'S OFFICE

PAGE 4 OF 4
CASE NUMBER 10-2215

**STATEMENT:** **Ogden, Tom Edwin**

I contacted Ogden at his residence and confirmed with him that he had good water pressure at his house. Ogden told me the spring that feeds the 3 properties was on BLM land about 1 mile away. The water line goes from the spring through Ogden's property then Wilson's and ends on Snedegar's property. Ogden also does all the repairs on the water line between his property and the spring. Ogden also does most of the repairs between his residence and Wilson's and Snedegar's residence.

He told me that he has free access to walk the line to look for breaks in the line. Ogden volunteered to walk the line with me. I told him that he didn't have to do that and it wasn't his responsibility. Ogden told me that he didn't mind doing it.

**FOLLOW-UP:** None: pending contact with Wilson

**REFERRAL:** None

**DISPOSITION:** Suspended

| Reporting Officer | I.D.# | Assisting Officer | I.D.# | Date & Time Prepared | Approved By | I.D.# |
|---|---|---|---|---|---|---|
| [illegible] | | [illegible] #74 | | 04/19/10 0130 | [illegible] | |

# In the Circuit Court of the State of Oregon for Lane County

THE . , OF OREGON,
Plaintiff,
vs.
Wilson, Charles Warren DOB 03/09/40,
Defendant.

Booking no.: ____________
Agency no.: 2010-2215

**Affidavit of Probable Cause and Order**

STATE OF OREGON )
) ss.
County of Lane )

I, Stacy Fenley, am a deputy sheriff employed by the Lane County Sheriff's Office, where I have been so employed for approximately 9 ½ years. My attached 4 page police report is incorporated herein as though fully set forth at this point. If I were called to testify under oath my testimony would be consistent with said report, and I believe the evidence described therein establishes probable cause to believe that Charles Warren Wilson, committed the crime(s) of violation stalking order in Lane County, Oregon. I believe I have probable cause to arrest Charles Warren Wilson for the crime(s) of violation stalking order.

#110
Signature

Stacy Fenley Deputy Sheriff
NAME and TITLE (printed)

SUBSCRIBED AND SWORN TO before me this 19 day of April ,20 10

OFFICIAL SEAL
WENDIE A JACKSON
NOTARY PUBLIC-OREGON
COMMISSION NO. 443462
MY COMMISSION EXPIRES OCTOBER 18, 2013

NOTARY PUBLIC FOR THE STATE OF OREGON
My Commission Expires:

**ORDER:**

**THIS MATTER** came before the Court on the 19th day of April , 20 10 for a determination of probable cause existing to arrest the Defendant. The Court having found probable cause; IT IS HEREBY ORDERED that the defendant shall be detained pending further proceedings in the Court.

**DATED** this 19 day of April , 20 10

Circuit Court Judge

**INITIAL ASSESSMENT FORM**
**HEALTH SERVICES SCREENING CONTACT**

| DATE TIME | Allergies - Claims none | SIGNATURE |
|---|---|---|
| 4-19-10 ~1030 | S. Code 3 Slumps to floor about 30 seconds or so after being housed in Bedan - 2 p court appearance. That resulted in being brought to jail - Is lying prone on floor between seat rows - legs out straight and both hands under his cheek - that is next to the floor. Body straight. He is verbally responsive - opens his eyes when asked to. Pupils are equal - and is able to tell the nurse he took his AM blood pressure meds - that some times he faints (? Dx for cause) - Is able c help of Deputies to sit up on chair - | |
| | O 148/88 P-102 R-12-14 ∅ resp distress - moves all extremities well - requests a vicodin for R shoulder / (L) knee pain - "I take it (PRN)" "when needed" - ∅ frequency given "I need a new knee" - "I would like a place to rest" | ∅ Injuries noted |
| | A - ?? Claimed HTN, Depression - knee + shoulder pain on IAI | |
| | P - moved to Intake for 30 min medical observation MH to see | |
| ~1230 | C/o chest pain - when medical arrives to eval - states | |
| 1300 | he is much better OK - no assist needed | |
| ~1330 | When nurse arrives to have Inmate sign ROI to Roseburg VA - He claims to be having a stroke - Then is unable to speak - but then answers a question yes - then stops speaking again - but writes a note demanding a phone call now. Is able to stand - then closes eyes when asked to and begins to fall backwards but is able to catch himself and does not fall - Peripheral vision OK - ∅ nystagmus - O B/P 142/91 - P-104 - R-14 - CBG 99 - able to drink OJ - ∅ drooling ∅ facial sag - O2 Sat 97% P - Is able to go to PTS now - States he's better now? - moves all extremities well. Sign ROI to VA B/P ✓ QD x 4 days | → Claim to Seizure Disorder. Abernel RN |

LANE COUNTY ADULT CORRECTIONS
MEDICAL DEPARTMENT

NAME: Wilson, Charles Warren
AIRS: 0118749 DOB: 3-9-40

#1

C77-272

Exhibit B

**FORM C**

IN THE CIRCUIT COURT FOR THE STATE OF OREGON
FOR LANE COUNTY

FILED 10 APR -5 PM 1:47 CIRCUIT COURT OF OREGON FOR LANE COUNTY BY

MICHAEL LEE SVEDEGAR SR
Petitioner

v.

CHARLES WARREN WILSON
Respondent

Case No. 18-10-07169

**STALKING PROTECTIVE ORDER**

X TEMPORARY

_____ FINAL

HEARING DATE __________ Judge __________ Reporter __________

THIS MATTER came before this Court by Petition for a Stalking Protective Order of unlimited duration for the protection of MICHAEL LEE SVEDEGAR SR (51) TINA L. SVEDEGAR (51) (WIFE)

(List all persons to be protected)

PETITIONER X Appeared in Court _____ Appeared by telephone

_____ Did not appear Attorney, if any present but not appearing

RESPONDENT _____ Appeared X Did not appear

_____ A Warrant of Arrest is ordered. Security amount is set at $50,000.

X **Respondent was served in court with a copy of this Order.**

**AFTER CONSIDERING THE EVIDENCE PROVIDED, THE COURT FINDS:**

X Probable cause _____ By a preponderance of the evidence;

1. That Respondent has X intentionally X knowingly or X recklessly engaged in repeated and unwanted contact with the Petitioner or a member of Petitioner's immediate family or household, thereby alarming or coercing that person or persons;
2. That it is objectively reasonable for a person in Petitioner's situation to have been alarmed or coerced by the Respondent's contact; and
3. The repeated and unwanted contact causes the Petitioner reasonable apprehension regarding Petitioner's personal safety or the safety of a member of Petitioner's immediate family or household.

**PURSUANT TO FEDERAL LAW, RESPONDENT'S ABILITY TO POSSESS FIREARMS IS AFFECTED IF, BY INITIALING EACH FINDING, THE COURT MAKES THE FOLLOWING FINDINGS:**

_______ The respondent was provided notice and an opportunity to be heard in this proceeding; and

_______ The Court finds that Petitioner and Respondent are intimate partners (spouses, former spouses, co-habitants, former co-habitants, or have a child in common) or Petitioner is a child of an intimate partner.

1 copy to Pet
1 CC LCSO
Def Srvd in CRT

Exhibit C

_______ The Court finds Respondent represents a credible threat to the physical safety of the person(s) to be protected.

**RESPONDENT IS HEREBY ORDERED TO CEASE AND REFRAIN FROM ANY CONTACT WITH:**

MICHAEL LEE SNEDEGAR SR.
TINA L. SNEDEGAR (WIFE)
(Person or Persons to be protected by the Order)

**CONTACT MEANS**, but is not limited to the following,

a. coming into the visual or physical presence of the other person; except for normal egress and ingress to his (respondent's) home)
b. following the other person;
c. waiting outside the home, property, place of work or school of the other person or a member of that person's family or household;
d. sending or making written communications in any form to the other person;
e. speaking with the other person by any means;
f. communicating with the other person through a third person;
g. committing a crime against the other person;
h. communicating with a third person who has some relationship to the other person with the intent of affecting the third person's relationship with the other person;
i. communicating with business entities with the intent of affecting some right or interest of the other person;
j. damaging the other person's home, property, place of work or school; or
k. delivering directly or through a third person any object to the home, property, place of work or school of the other person.
l. respondent shall not obstruct or block the common driveway
m. respondent shall not obstruct, block, or alter petitioner's water access

**IT IS FURTHER ORDERED THAT:**

_____ The Petition for the Stalking Order is denied.

_____ Respondent shall undergo mental health evaluation and, if indicated by the evaluation, treatment.

_____ The Court finds that Respondent is without funds to obtain the evaluation or treatment or both. Respondent is referred to ____________________ for this service.

_A_ ~~This~~ Stalking Protective Order is temporary and shall remain in effect until service of the Final Stalking Protective Order or dismissal of the matter.

_____ This Stalking Protective Order and Judgment is of unlimited duration unless modified by law or further order of the Court.

**SECURITY AMOUNT FOR VIOLATION OF ANY PROVISION OF THIS ORDER IS $20,000, UNLESS OTHERWISE SPECIFIED.**

OTHER SECURITY AMOUNT: $____________

Signed: April 5, 2010

[signature]
Circuit Court Judge (Signature)

Eveleen Henry
Circuit Court Judge (Printed)

rev. 09/09

Exhibit C



Exhibit C

# CERTIFICATE OF SERVICE

I, Sebastian Newton-Tapia, hereby certify that I am the attorney for the Defendants herein; that I served the Plaintiff the foregoing **MEMORANDUM IN SUPPORT OF DEFENDANTS MOTION FOR SUMMARY JUDGMENT**, on the 3rd day of July, 2012, by placing a duly certified copy thereof in a sealed envelope plainly addressed as follows:

Charles Wilson
PO Box 71764
82619 Slimonsen Road
Eugene, OR 97401

XX Postage prepaid and deposited in the United States Post Office at Eugene, Oregon.

XX CM/ECF.

_____ Delivered personally by me or by a member of my staff.

_____ Caused to be delivered by facsimile transmission, fax #:____________________.

Sebastian Newton-Tapia, OSB# 043761
Lane County Office of Legal Counsel
125 East Eighth Avenue
Eugene, OR 97401
541/682-3728
541/682-3803 fax
sebastian.newton-tapia2@co.lane.or.us
Of Attorneys for Defendants