IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

CHARLES WILSON,                          )
                                         )
                    Plaintiff,           )    No. 6:12-cv-691-AA
                                         )
         v.                              )    O R D E R
                                         )
LANE COUNTY SHERIFF'S OFFICE,            )
SHERIFF ROSS BURGER in his              )
individual and official capacities,     )
                                         )
                    Defendants.          )
_____)

AIKEN, Chief Judge:

    Plaintiff brings this action asserting violation of his civil
rights.  Plaintiff filed his complaint pro se on April 18, 2012.  On
July 3, 2012, defendants filed a motion to dismiss and for summary
judgment and, after the court issued an order advising plaintiff of
the summary judgment standards, plaintiff retained counsel. Plaintiff
submitted a response through counsel, but plaintiff's counsel has
since withdrawn.

## ALLEGATIONS

Plaintiff is 72 years of age and hard of hearing.

On April 19, 2010, plaintiff attempted to settle a dispute regarding a restraining order with a neighbor in court. Plaintiff alleges he was handcuffed with his hands behind his back as he was leaving the courtroom which caused his shoulder to dislocate.[1]

After being placed in a van and transported to Lane County jail, plaintiff alleges that defendants locked him in solitary confinement. Plaintiff asserts he received no medical treatment or access to a phone.

Plaintiff alleges that his family was also denied access to him and were not permitted to provide plaintiff his medicine.  Plaintiff further alleges that even after he appeared before a judge on April 20, he was returned to solitary confinement without access to a usable phone.

Plaintiff also alleges he has been unable to obtain documents from the Lane County District Attorney's office.

Plaintiff asserts a claim for violation of the Fourth Amendment and seeks damages related to his shoulder injury and other physical and emotional injury.  Defendants seek summary judgment or dismissal as to all theories of plaintiff's case.

---

[1]Plaintiff  was  arrested  for  violation  of  a  temporary  stalking order.

### DISCUSSION

Defendants contend that (1) plaintiff fails to state a claim concerning excessive force; (2) that no reasonable juror could conclude that plaintiff was injured during the arrest; (3) there are no allegations to support an individual capacity claim against defendant Sheriff Burger; (4) there are insufficient facts to establish municipal liability; (5) the arresting officer is entitled to qualified immunity; (6) plaintiff's rights were not violated regarding phone access; (7) any possible state law claims are barred under the Oregon Tort Claims Act;[2] and (8) the District Attorney is not a named defendant.[3]

### A.   Excessive Force

The Fourth Amendment requires police officers making an arrest to use only an amount of force that is objectively reasonable in light of the circumstances facing them. Tennessee v. Garner, 471 U.S. 1, 7-8 (1985).   To determine whether a specific use of force is reasonable, courts balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing government interests at stake." Graham v. Connor, 490 U.S. 386, 396 (1989).   Relevant factors to this inquiry include, but are not limited to, "the severity of the crime at issue, whether the

---

[2]Plaintiff's response does not indicate any state law claims will be asserted.

[3]Plaintiff's response does not indicate any claims against the District Attorney will be asserted.

3 - ORDER

suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id. When appropriate, a reasonableness determination must also make "allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." Id. at 396-97.

Defendants move to dismiss contending that plaintiff fails to allege that the degree of force used caused his shoulder to dislocate. However, plaintiff alleges that he "was handcuffed with my hands behind my back which caused my shoulder to dislocate." Complaint (#1) at ¶ 12. A plausible reading of this allegations is that the force applied in handcuffing plaintiff was excessive.

Defendants also move to dismiss the excessive force claim against defendant Sheriff Burger contending there are no allegations that Burger made the arrest, knew of it, or ratified it. Liability under section 1983 cannot be based on the traditional theory of respondeat superior. See Board of County Commissioners of Bryan County, Oklahoma v. Brown, 520 U.S. 397, 416 (1997). Congress did not intend local governments to be held liable under section 1983 unless action pursuant to official government policy of some nature caused a constitutional tort." Monell v. New York City Dept. of Social Services, 436 U.S. 658, 691 (1978).

To establish Section 1983 liability, plaintiff must satisfy one of three conditions:

> First, the plaintiff may prove that a [Sheriff's] employee committed the alleged constitutional violation pursuant to a formal governmental policy or a longstanding practice or custom which constitutes the standard operating procedure of the local governmental entity. Second, the plaintiff may establish that the individual who committed the constitutional tort was an official with final policy-making authority and that the challenged action itself thus constituted an act of official governmental policy. Whether a particular official has final policy-making authority is a question of state law. Third, the plaintiff may prove that an official with final policy-making authority ratified a subordinate's unconstitutional decision or action and the basis for it.

Gillette v. Delmore, 979 F.2d 1342, 1346-47 (9th Cir. 1992) (citations and internal quotations omitted).[4]

The complaint lacks any allegations to establish liability on the part of the Sheriff or Sheriff's department. The motion to dismiss is granted as to the excessive force claim against defendant Sheriff Burger and the Lane County Sheriff's Office. Although the complaint does not name Lane County itself as a defendant, to the extent plaintiff seeks to allege a claim against Lane County, that claim is dismissed as well.

Defendants also seek summary judgment on the excessive force claim contending that no reasonable juror could believe that plaintiff was injured from the arrest. Defendants rely on the notes taken by the nurse at intake after plaintiff's arrest. However, plaintiff

---

[4]After proving that one of these circumstances exists, plaintiff must then show that the circumstance was the cause in fact and the proximate cause of the constitutional deprivation. Arnold v. International Business Machines Corp., 637 F.2d 1350, 1355 (9th Cir. 1981).

offers his own statement that he was handcuffed with enough force that his shoulder dislocated.  Plaintiff's Affidavit (#14) at p. 2.

Defendants argue that the nurses notes show a preexisting injury. However, the notes indicate that plaintiff requested "a Vicodin for shoulder/knee pain - 'I take it ... when needed' ... 'I need a new knee' ... 'I would like a place to rest.'"  Initial Health Assessment Form, attached as Exhibit B to the Declaration of Larry Brown (#7). It is not clear from the notes if plaintiff suffered an injury from the arrest or suffered from a preexisting condition.

Defendants also argue that plaintiff's own statement that his shoulder was dislocated when he was handcuffed is insufficient because he is not qualified make a medical diagnosis.  It should be noted that virtually no discovery has occurred in this case and plaintiff's former counsel responded that discovery needs to be conducted before plaintiff can adequately respond to the summary judgment motion. Nonetheless, plaintiff's own statement is at least sufficient to show he suffered some injury as a result of force.

Reasonable force is that force which is necessary to secure the safety of the officers during an arrest.  Graham, 490 U.S. at 395. Police officers are not required to pursue the least intrusive degree of force when force is reasonably necessary.  Cady v. Dombrowski, 413 U.S. 433, 447 (1973).  Here, the facts surrounding the arrest have not been developed and it is unclear what injury plaintiff suffered. Defendants prematurely seek summary judgment before delving deeper into discovery to demonstrate lack of any issues regarding the

reasonableness of the amount of forced used in making the arrest. The motion for summary judgment as to the excessive force claim against the arresting officer is denied.

Defendant Sheriff Burger, and presumably the Lane County Sheriff's office, also seek summary judgment contending that plaintiff has presented no facts to seek liability against the Sheriff for the excessive force. Because the excessive force claim against the Sheriff is dismissed as noted above, the court will permit plaintiff to amend to add facts to establish <u>Monell</u> liability, if possible. The motion for summary judgment as to the Sheriff and the Lane County Sheriff's Office is denied as moot for now.

## B. Decision to Arrest

Defendants next contend that the arresting officer is entitled to qualified immunity concerning the decision to arrest plaintiff.

The record before the court establishes that plaintiff was served with a copy of a temporary stalking protective order on April 5, 2010, and that it was still in effect when plaintiff was arrested. Or. Rev. Stat. § 133.310(3) permits a peace officer to, without a warrant, arrest a person who violates a stalking protective order after service of the order.

Probable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient to warrant a prudent person to believe that a suspect has committed, is committing, or is about to commit a crime. <u>United States v. Hoyos</u>, 892 F.2d 1387,

1392 (9th Cir. 1989). The question is whether the arresting officer's actions are objectively reasonable in light of the facts and circumstances confronting him, without regard to his underlying intent or motivation. Graham v. Connor, 490 U.S. 386, 397 (1989).

While the qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law, Hunter v. Bryant, 502 U.S. 224, 229 (1991), the facts are insufficiently developed for the court to make a determination as to the decision to arrest. An incident report indicates that the decision to arrest is based on the fact that the person who obtained the stalking order complained that his water had been shut off by plaintiff. The stalking order prohibits plaintiff from obstructing the flow of water to the protected party's property. The responding officer did not locate plaintiff and it is unclear what basis there is for determining that plaintiff did in fact turn off the water.

The incident report further indicates that probable cause is based on the water being shut off and that the protected party informed the officer that plaintiff would be at a hearing with him to contest the stalking order[5] and that sheriff's deputies would be dispatched to make the arrest at that time and place. The court cannot determine from the record whether probable cause to arrest did in fact exist and the judge's signature, on the affidavit of probable cause, was obtained ex parte after the arrest and therefore has no

---

[5]Plaintiff also had an order prohibiting the protected party from having contact with him.

preclusive effect on this court.  The motion for summary judgment as to the decision to arrest is denied.

C.   Access to a Telephone

Courts have recognized a detainee's First Amendment right to telephone access.  Strandberg v. City of Helena, 791 F.2d 744, 747 (9th Cir. 1086).  The right is subject to rational limitations in the face of legitimate security interests and if the limitations on access are reasonable, there is no First Amendment violation.  Id.

Defendants assert plaintiff had access to a telephone for placing collect calls.[6]  Plaintiff states that he was repeatedly denied use of a phone because: (1) he had to wait for the next shift; (2) he had to wait for the phones to be turned on at 8:00 a.m.; (3) when he finally was allowed to use the phone, it only played a recording that denied access; (4) he then had to wait until 9:00 am for the phones to be turned on; and (5) after an officer informed him that she could get the phone to work, he still got just a recording and was returned to his cell without getting to use the phone.  Plaintiff's Affidavit (#14) at pp. 4-6.

At this stage of the proceedings, there is a dispute of fact as to whether plaintiff was allowed access to a working phone and therefore summary judgment on this claim is inappropriate.

---

[6]The declaration of Sheriff's Deputy Larry Brown, (#7) at p. 2, is somewhat contradictory on this point in that he states the holding cell where plaintiff spent the first two hours had a working phone, but later states that plaintiff lost the opportunity to use the phone in the "day room" due to unacceptable behavior.

D.    Indifference to Medical Needs

Although defendants' motion did not address any claims for indifference to medical needs,[7] plaintiff raises the claim in his response to the motion.

A pretrial detainee's section 1983 action for inadequate medical treatment arises from the due process clause of the Fourteenth Amendment. See Jones v. Johnson, 781 F.2d 769, 771 (9th Cir. 1986). The due process clause imposes, at a minimum, the same duty the Eighth Amendment imposes: "persons in custody ha[ve] the established right to not have officials remain deliberately indifferent to their serious medical needs." Carnell v. Grimm, 74 F.3d 977, 979 (9th Cir. 1996).

Under the Eighth Amendment's standard of deliberate indifference, a person is liable for denying a prisoner needed medical care only if the person "knows of and disregards an excessive risk to inmate health and safety." Farmer v. Brennan, 511 U.S. 825, 837 (1994). In order to know of the excessive risk, it is not enough that the person merely "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, ... he must also draw that inference." Id. If a person should have been aware of the risk, but was not, then the person has not violated the Eighth Amendment, no matter how severe the risk. Jeffers v. Gomez, 267 F.3d 895, 914 (9th Cir. 2001). But if a person is aware of a substantial risk of serious harm, a person may be liable for neglecting a prisoner's serious

_____

[7]However, defendants' motion does seek summary judgment as to all possible claims.

medical needs on the basis of either his action or his inaction. Farmer, 511 U.S. at 842.

Plaintiff asserts that he told the nurse he needed five separate medications for pain, anxiety and PTSD, depression, blood pressure, and sleeping assistance, but that he did not receive any medications. Plaintiff further asserts he informed jail personnel that his family could bring the needed medications and that at least one of his conditions was life threatening.

Defendants argue that plaintiff's contentions are contradicted by the nurses notes wherein it is documented that he was provided medical attention. However, the notes tend to support plaintiff's theory in that it is indicated that: when plaintiff was discovered on the floor, he stated he took his morning blood pressure medication and that sometimes he faints; he requested Vicodin for pain in his shoulder and knee; and he claimed depression, chest pain and a seizure disorder. Initial Assessment Form, attached as Exhibit B to the Declaration of Larry Brown (#7). The notes do not indicate that medications were provided, but only that plaintiff was observed. At this stage of the proceedings, summary judgment on this claim is not appropriate.

Plaintiff's previous counsel concedes that the complaint needs to be amended. In addition, although the court has previously permitted plaintiff time to obtain counsel and denied a request for appointment of pro bono counsel, plaintiff shall be allowed an

additional sixty days to obtain counsel.[8]   If after sixty days,
plaintiff has not obtained counsel, he may seek reconsideration from
the court as to the appointment of pro bono counsel.   After that,
plaintiff shall have 30 days to file an amended complaint clarifying
his claims and curing the deficiencies noted above.

## CONCLUSION

For the reasons stated above, defendants' motion to dismiss and
for summary judgment (#4) is granted in part and denied in part.
Plaintiff shall file an amended complaint, as outlined above, within
90 days.

DATED this ___2/5T___ day of December, 2012.

                                        Ann Aiken
                            United States District Judge

---

[8]At  oral  argument,  plaintiff  indicated  he  was  in  the  process
of  freeing  up  funds  and  would  seek  counsel  from  outside  the  county.

12 - ORDER